TED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| NICK NEFF and MATTHEW MCCREA individually and on behalf of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>FLOWERS FOODS, INC., LEPAGE BAKERIES, INC. and CK SALES CO., LLC,<br><br>Defendants. | Court File No. 5:15-cv-00254-gwc<br><br>**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT FOR EXPENSES, AND PAYMENT OF SERVICE AWARDS** |

## I.     INTRODUCTION

Class Counsel respectfully requests the Court to grant their unopposed motion for payment of attorney's fees, reimbursement of expenses, and payment of service awards to the Class Representatives, Nick Neff and Mathew McCrea. Class Counsel have achieved a comprehensive Settlement that resolves five years of hard-fought, complex class and collective action against LePage Bakeries Park Street, LLC, CK Sales Co., LLC (collectively, "LePage") and Flowers Foods, Inc. (collectively "Flowers" or "Defendants"). The Settlement, reached after arm's length negotiations that spanned over a year with the assistance of an experienced mediator, provides substantial monetary relief and other benefits to a class of current and former Distributors who alleged that Defendants misclassified them as independent contractors. Plaintiffs alleged violations of the Vermont Employment Practices Law, 21 Vt. Stat. Ann. §§ 342, 384(c) ("VEPL"), the Vermont Consumer Protection Act, 9 Vt. Stat. Ann. § 2453, and the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") based on this misclassification.

550696.4

The Settlement creates a $7.6 million common fund that provides for payments to all FLSA Collective Members and Settlement Class members. The payments include: 100% of overtime damages as calculated by Class Counsel's expert witness for all FLSA Collective Action members; 97% of wage deductions Class Counsel identified as likely to be recoverable under the wage deduction statute for all Vermont Settlement Class Members; and a smaller payment for state overtime claims for Vermont Settlement Class Members who did not elect to join the FLSA collective action. The estimated recoveries are after payment of the requested attorney's fees and expenses, service awards in the amount of $15,000 to each of the two Named Plaintiffs, attorney's fees and costs to Class Counsel, and additional payments of $3,500 each to current Distributors who are Settlement Class Members and who elect to arbitrate applicable disputes. In addition to the settlement fund, Defendants also have agreed to pay all costs of Settlement administration.

In addition to significant monetary damages, the Settlement provides valuable non-monetary relief which enhances the independent Distributor model to the benefit of the Distributors. The non-monetary terms include: a Buy Back Option whereby Settlement Class Members who are current Distributors are eligible to have their territories repurchased by LePage; creation and staffing of a Distributor Advocate position to oversee an internal, alternative dispute resolution process for independent Distributors; creation and implementation of a Distributor Review Panel which provides for an internal review process for resolution of contract-related disputes; formalizing Distributors' rights to discuss issues such as product placement and days of service directly with authorized management personnel from their accounts; and creation of a process through which Distributors can raise the issue of non-profitable accounts with LePage, among others.

Pursuant to Rule 23(h) of the Federal Rules of Civil Procedure and 29 U.S.C. § 216(b), Plaintiffs respectfully ask the Court to approve an award of 33% of the Settlement Fund or $2,508,000 for attorney's fees for successfully litigating this case and achieving this economic and equitable relief on behalf of the Settlement Class, plus expenses advanced by Class Counsel over the past five years, or $157,862. Plaintiffs also respectfully request the Court grant service awards of $15,000 each to the two Class Representatives for their time and efforts undertaken on behalf of the Settlement Class.

## II.   Procedural History and Factual Background

Plaintiffs Nick Neff and Matthew McCrea filed this action on December 1, 2015 on behalf of themselves and a class of current and former Distributors alleging that Defendants misclassified Distributors as independent contractors in violation of the FLSA, and sought damages for alleged violations of the VEPL and VCPA. On November 7, 2016, this Court granted Plaintiffs' motion for conditional certification of a collective action pursuant to § 216(b) of the FLSA. The FLSA Collective Class was defined as:

> All persons who are or have performed work as "Distributors" for Defendants [in Vermont, New Hampshire, Massachusetts, Connecticut, Rhode Island, or New York] under a "Distributor Agreement" or a similar written contract with LePage Bakeries or CK Sales that they entered into during the period commencing three years prior to the commencement of this action through the close of the Court-determined opt-in period and who file a consent to join this action pursuant to 29 U.S.C. § 216(b).

Following conditional certification, the parties engaged in nearly three years of discovery, which involved extensive document production totaling hundreds of thousands of pages. Plaintiffs used sophisticated continuous-learning technology assisted review to efficiently review these documents. In addition, Plaintiffs' counsel responded to interrogatories and requests for document production on behalf of the Named Plaintiffs and 53 opt-in plaintiffs, and defended the depositions

of over a dozen opt-in plaintiffs and the Named Plaintiffs. Plaintiffs' counsel deposed multiple corporate executives, and took extensive 30(b)(6) depositions of both Flowers Foods and LePage Bakeries. The parties also engaged in expert discovery, which included the exchange of preliminary and supplemental expert reports and the depositions of both parties' expert witnesses. Ongoing issues with Defendants' database necessitated extensive expert work in order to accurately capture Plaintiffs' damages.

After the completion of discovery, Defendants moved to decertify the FLSA collective action and Plaintiffs moved for class certification pursuant to Federal Rule of Civil Procedure 23 on the VEPL claims. Plaintiffs sought to certify a class defined as: "All persons who, at any time from December 2, 2012 continuing through entry of judgment in this case, worked as Distributors for Flowers Foods, Inc., LePage Bakeries, Inc., and/or CK Sales Co., LLC in the State of Vermont and were classified as independent contractors under their distribution agreements." The Court held oral argument on both motions on March 22, 2019. On May 16, 2019, the Court denied Defendants' motion to decertify the FLSA Collective Action and granted Plaintiffs' motion to certify a Rule 23(b)(2) and Rule 23(b)(3) class for purposes of pursuing the VEPL claims.

Just prior to the issuance of the Court's order on the cross-motions to decertify the collective action and certify the Rule 23 class, the parties held their first formal mediation with Michael E. Dickstein of Dickstein Dispute Resolution on May 5 and 6, 2019. The mediation required considerable preparation including reviewing new data produced by Defendants and working with Plaintiffs' expert to revise damages; drafting a comprehensive mediation statement; and analyzing and responding to each of the legal issues and defenses asserted by Defendants.[1]

---

[1] The parties also mediated the related Pennsylvania and North Carolina cases during this two-day session. Although the cases involve similar claims of misclassification, each case involves

The parties were unable to resolve the matter during the first mediation, and returned for a second mediation session on June 13-14, 2019. Again, the parties were unable to reach a settlement, but agreed to continue discussions via telephone with the assistance of Mr. Dickstein.

Following the mediation, Defendants filed motions to limit notice to the Class, through which Defendants sought to eliminate the state overtime claims, as well as a motion to exclude Plaintiffs' third expert report. The parties briefed these motions in the fall of 2019. While continuing to litigate the case, the parties simultaneously engaged in settlement discussions. Ultimately, after numerous conference calls and written proposals extending several months, the parties made sufficient progress to warrant another in-person mediation session on December 9, 2019, where they finally reached a settlement. After several additional months of negotiations regarding terms, the Settlement Agreement was signed on May 15, 2020. The parties moved for preliminary approval on May 18, 2020; this Court preliminarily approved the Settlement on June 4, 2020.

### III.    The Award of Attorney's Fees is Reasonable Under Federal Standards.

Pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, "[i]n a certified class action, the court may award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Similarly, the FLSA provides that in a collective action, a court shall "allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b).

The Second Circuit has held that either the lodestar or percentage of the recovery methods may be used to calculate fees in common fund cases. *Goldberger v. Integrated Resources, Inc.*,

---

different Flowers' subsidiaries and corporate structure, and different employment status tests, state law claims and defenses, and damages calculations.

209 F.3d 43 (2d Cir. 2000). "The trend in the Second Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (internal citations omitted). Here, Plaintiffs' Counsel seeks to recover one-third of the common fund in fees, in addition to expenses. This recovery falls well within the range of reasonable fees approved by courts across the Second Circuit in complex FLSA and Rule 23 wage and hour hybrid cases such as this one. *See Cohan v. Columbia Sussex Mgmt, LLC*, CV 12-3203, 2018 WL 4861391, at *2 (E.D.N.Y. Sept. 28, 2018) (citing cases awarding one-third of multi-million dollar common settlement funds); *Cunningham v. Suds Pizza, Inc.*, 290 F. Supp. 3d 214, 230–32 (W.D.N.Y. 2017) (approving 50 percent of actual settlement value); *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12-cv-4216, 2014 WL 3778173, at *8–14 (S.D.N.Y. July 31, 2014) (awarding one-third of $2 million settlement fund); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477–82 (S.D.N.Y. 2013) (approving one-third of $5 million settlement and citing FLSA cases approving similar settlements); *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-cv-05669, 2012 WL 5874655, at *7 (E.D.N.Y. Nov. 20, 2012) (approving one-third of $4 million settlement fund).

Under Second Circuit precedent, the Court could approve a one-third fee as reasonable with no further inquiry. The Court may also consider the *Goldberger* factors as well as conduct a lodestar "cross-check" of the requested fee award. As demonstrated below, all of the factors, in addition to the lodestar cross-check, provide additional support for the requested fee award in this case.

### A.  The *Goldberger* Factors Support the Reasonableness of Counsel's Fee Petition.

In evaluating the reasonableness of counsel's requested fee award, the Second Circuit has directed courts to consider six factors: (1) the time and labor expended by counsel; (2) the

magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of the representation; (5) the requested fee in relation to the Settlement; and (6) public policy considerations. *See Forauer v. Vt. Country Store, Inc.*, No. 5:12-cv-276, 2015 WL 225224, at *10 (D. Vt. Jan. 16, 2015) (citing *Goldberger*, 209 F.3d at 50). All of these considerations weigh in favor of Plaintiffs' Counsel recovering their requested fee in this case.

1. **Class Counsel's Time and Labor**

Here, Class Counsel has spent over 5,750 hours litigating this case for a total lodestar of $2,756,197. These hours were documented contemporaneously, and detailed, task-based itemized statement of each firms' attorney's fees are available upon request for the Court's *in camera* review. *See Scott v. City of New York*, 643 F.3d 56, 57 (2d Cir. 2011) (requiring contemporaneous time records). These hours show the tremendous time and labor that Class Counsel devoted to this case, **without any guarantee of recovery**. This time includes the investigation and drafting of the Complaint; the review of hundreds of thousands of LePage and Flowers documents; the substantial time necessary to contact each of the 53 opt-in plaintiffs to interview them, gather relevant documents and information, and complete extensive interrogatory responses; preparing and taking affirmative depositions of LePage and Flowers executives, including two 30(b)(6) depositions on a wide range of topics; preparing and defending over a dozen depositions of Plaintiffs; research of complex issues including but not limited to the state independent contractor test, state overtime and wage deduction statutes and available defenses, and preemption under the Federal Aviation and Administration Authorization Act (FAAAA), gross and net wages and offsets under the FLSA, and the applicability of the Motor Carrier Act and Technical Corrections Act exemptions from the Fair Labor Standards Act; briefing class certification and collective action motions, as well as other discovery motions; preparing for and attending hearings on

conditional certification, class certification, and opposition to decertification; analyzing multiple productions of and revisions to damages data; working with experts, including the preparation of expert reports and taking and defending expert depositions; and finally, three in-person mediation sessions as well as months of ongoing settlement negotiations that ultimately resulted in this Settlement. Plaintiffs' Counsel has already and will incur additional, uncompensated time briefing the final approval motion and finalizing and administering the Settlement. *See Cohan*, 2018 WL 4861391, at *3 (noting the requested fees were meant to compensate Counsel for time spent administering the Settlement in the future). Because Class Counsel's cumulative lodestar exceeds the percentage of the fund requested, Class Counsel's fee request is reasonable in relation to the time and effort that Counsel expended in the course of this litigation. *See Forauer*, 2015 WL 225224, at *10.

### 2. The Magnitude and Complexities of the Litigation

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award. "FLSA claims typically involve complex mixed questions of fact and law," and such issues must be resolved "in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981). In particular, "hybrid" actions, wherein FLSA clams, which utilize the "opt-in" collective action mechanism, are brought alongside state wage and hour violations, which utilize the Rule 23 class action mechanism, have a tendency to be particularly complex, and warrant special consideration. *See Cohan*, 2018 WL 4861391, at *3 (noting the complicated mixed questions of fact and law associated with a hybrid FLSA and Rule 23 action support approval of attorneys' fee request); *Sukhnandan*, 2014 WL 3778173, at *10 (same). As one court noted, there are "relatively few FLSA cases that raise complex issues like exemptions, coverage, collective

action notification, classification, or statutory interpretation." *Encalada v. Baybridge Enter. Ltd.*, No. 14 Civ. 3113 (BMC), 2014 WL 4374495, at *2 (E.D.N.Y. Sept. 2, 2014), *aff'd,* 612 F. App'x 54 (2d Cir. 2015). This case raised all of these issues in addition to Vermont-specific wage and hour issues such as the application of the Vermont ABC test, FAAAA preemption, corporate standing, and the proper interpretation of Vermont's deductions statute. The magnitude and complexities of this case therefore weigh in favor of approving Counsel's fee petition.

### 3. The Risk of the Litigation

The risks of litigation here were substantial, and should weigh in favor of the reasonableness of the requested award. Class Counsel has prosecuted this case for almost five years, assuming the risk that they might not ultimately recover for their time and effort. Although Flowers Foods has settled two cases in the past, it did so after lengthy, costly litigation and after obtaining adverse key rulings – one on the very eve of trial. Here, the risk of trial was very real and this litigation was contentious and hard-fought, from conditional certification through discovery to class certification and FLSA decertification. After Defendants lost their decertification motion, they moved the Court to limit class notice – which would have effectively eliminated an entire class claim to overtime. Although Plaintiffs were confident in their claims, Defendants put forth numerous defenses under both the FLSA and state law, upon which they could have prevailed over Plaintiffs on summary judgment or at trial. Furthermore, the fact that it took three in-person mediation sessions to arrive at a resolution demonstrates that this case was not easily resolvable and success was not guaranteed. The parties were fully prepared to move on to summary judgment and trial should the mediation have failed. Because Class Counsel ran the very real risk of "recovering nil," this factor weighs in favor of approving the fee petition. *See Forauer*, 2015 WL 225224, at *11.

4. **The Quality of Representation**

To make a determination regarding the quality of representation, courts may rely on their own observations and review the backgrounds of the lawyers involved in the lawsuit and the recovery obtained. *Cohan*, 2018 WL 4861391, at *4. Class Counsel have demonstrated that they are qualified and experienced advocates able to vigorously conduct this litigation on behalf of the Class. Shawn Wanta of Baillon Thome Jozwiak & Wanta LLP, Susan Ellingstad of Lockridge Grindal Nauen P.L.L.P., Gordon Rudd of Zimmerman Reed LLP, and Charlie Schaffer of Levin Sedran Berman, all have extensive and particular experience in national wage and hour class action and FLSA litigation, including in independent contractor misclassification litigation and have served as Class Counsel in similar cases. *See* Wanta Decl. ¶¶ 8-9; Ellingstad Decl. ¶¶ 4-6; Rudd Decl. ¶¶ 3, 6; Schaffer Decl. ¶¶ 4-6. These Declarations demonstrate that Class Counsel are highly regarded in their local legal communities and across the country for their work in employment and class action litigation.

In evaluating this factor, the Court also considers the recovery achieved on behalf of the class. Here, Plaintiffs will receive **100%** of their estimated overtime using a two-year statute of limitations, and **97.8%** of the wage deductions most likely to be recovered under the state deductions statute – assuming Plaintiffs prevailed on all of the defenses levied by Defendants. Wanta Decl. ¶ 2. Considering the time, expense, and risks associated with continuing to litigate this case, this is a substantial recovery for the Class, demonstrating the quality of representation.

5. **The Requested Fee in Relation to the Settlement**

As stated above, *after the fees requested by Class Counsel,* FLSA Collective Members still recover 100% of their estimated overtime damages, and Settlement Class Members recover approximately 97.8% of the wage deductions Class Counsel identified as most likely to be

recovered at trial under the state deductions statute, should Plaintiffs prevail. Over $4,900,000 in damages will be distributed to the Class members assuming Class Counsel's requested fees and expenses are awarded. In addition, class members who sign the arbitration agreement and class action waiver will receive an additional $3,500 payment.

The court in *Forauer* awarded 50% of the settlement fund as attorney's fees where the remaining settlement compensated plaintiffs for the full amount of their statutory damages. *Forauer*, 2015 WL 225224, at *10. As the *Forauer* court stated: "The Settlement Agreement's award distribution among the collective action and counsel therefore remains 'fair, reasonable and adequate because even after attorney's fees [and] costs, [P]laintiffs would receive nearly all of their actual damages.'" *Id.* at *10 (quoting *Lizondro–Garcia v. Kefi LLC*, 300 F.R.D. 169, 180 (S.D.N.Y. 2014)).

Because Plaintiffs will recover a high proportion of their potential damages after the requested attorney's fees, this factor strongly supports the reasonableness of the Settlement and the fee award. Moreover, Plaintiffs' Counsel are requesting a significantly smaller percentage of the fund than approved in *Forauer*, and a percentage that is well in line with fee awards in other complex FLSA/wage and hour class and collective actions. *See Cohan*, 2018 WL 4861391, at *2. Finally, the Settlement Agreement includes significant non-monetary terms and changes to the independent Distributor model used at LePage Bakeries, which provide material benefits to the Class. These include, for example, a Buy Back Option whereby Settlement Class Members who are current Distributors are eligible to have their territories repurchased by LePage; creation and staffing of a Distributor Advocate position, who oversees an internal, alternative dispute resolution process for independent Distributors; creation and implementation of a Distributor Review Panel, which provides for an internal review process for resolution of contract-related disputes;

formalizing Distributors' rights to have discussions with appropriate management personnel within their accounts who have authority to engage in such discussions regarding product placement and days of service; and a process through which Distributors can raise the issue of non-profitable accounts with LePage, among others. The "Buy Back" option is available to all Settlement Class Members who remain under a Distributor Agreement with Defendants. While the value of each Settlement Class Member's option is different depending upon the sales figures for each route, Class Counsel estimates that the value of the option is over $50,000 per route. All of these changes, while difficult to assign a monetary value, provide tangible and ongoing benefits to the Class in terms of their day-to-day work and interactions with Defendants. *See, e.g.*, *Semon v. Swenson*, No. 5:10-cv-00143-cr, 2013 WL 1182224, at *6 (D. Vt. Mar. 21, 2013) (considering non-monetary benefits to the class realized during the course of litigation).

Given the substantial monetary and non-monetary benefits achieved for the Class, and the time and labor expended by Counsel to achieve this result, the Court should approve Plaintiffs' Counsel's fee petition.

### 6. Public Policy Considerations

The Second Circuit has also recognized the strong public policy considerations supporting approval of attorney's fees and costs in FLSA and other wage and hour actions. "Plaintiffs' counsel must be adequately compensated for their efforts, otherwise, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk." *Forauer*, 2015 WL 225224, at *11 (citing *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 623 (S.D.N.Y. 2012)). Accordingly, public policy considerations weigh in favor of approval of Plaintiffs' Counsel's fee petition here.

**B. A Lodestar Cross-Check Supports the Reasonableness of Plaintiffs' Fee Petition.**

In addition to considering the *Goldberger* factors, courts will often "cross-check" the requested percentage against Counsel's lodestar. The lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. Here, the Class Counsel firms performed approximately 5,750 hours of work necessary to the prosecution of Plaintiffs' claims. Multiplied by their various reasonable rates, Counsel's accumulative audited lodestar is $2,756,197, and their costs incurred are $157,862 for a total of $2,914,059 in fees and costs. The requested 33% of the common fund in attorney's fees, $2,508,000, represents a reduction of $248,197 from Class Counsel's audited lodestar. That lodestar *already* has been reduced for billing judgment and duplication, as well as the application of capped rates for paralegals and attorneys performing document review. Class Counsel's audited lodestar is fully supported by Counsel's work in this case and the excellent result achieved for the class. In assessing the lodestar for cross-check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court . . . the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Goldberger*, 209 F.3d at 50. Nevertheless, the below discussion demonstrates the reasonableness of Counsel's hours expended on this case as well as their hourly rates, and supports Counsel's request for 33% of the settlement fund, which is less than their audited lodestar.

**1. The Service Hours Performed by Counsel's Firms were Reasonably Necessary to Prosecute and Settle the Action.**

In evaluating whether claimed hours are reasonable, a court considers "not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). As discussed above, the contemporaneous, detailed time records maintained by each of Class Counsel's firms demonstrate the substantial but necessary

time devoted to successfully litigating and settling this case. *Cruz v. Local Union No. 3 of Int'l Bhd. Of Elec. Workers*, 34 F.3d 1148, 1160–61 (2d Cir. 1994) (requiring contemporaneous time records). This time includes substantial investigation into the merits of Plaintiffs' claims both under the FLSA and under Vermont law, and researching and briefing conditional certification and class certification, as well as the opposition to Defendants' motion for decertification. Plaintiffs' counsel also spent substantial time in discovery, including, as already noted, reviewing thousands of documents, collecting and producing documents for dozens of opt-in plaintiffs, and taking affirmative depositions of numerous LePage and Flowers executives. Class Counsel used sophisticated, continuous-learning technology assisted review to help streamline document review and reduce attorney time. The parties also engaged in three separate mediation sessions and ongoing settlement negotiations spanning almost one year—while continuing to litigate the case—before reaching the Settlement. Lead Counsel sought to allocate work in the case among the various firms involved, endeavoring to avoid duplication of work. Wanta Decl. ¶ 3. As demonstrated by Class Counsel's declarations and underlying records, Class Counsel strove to appropriately allocate tasks to junior partners, associates, or paralegals where possible, and carefully considered and limited staffing for travel, depositions, and hearings. *Id.* These factors demonstrate that Class Counsel's hours were reasonably necessary to prosecute and settle this action.

**2. Counsel's Rates are Reasonable in the Context of this Complex Hybrid Litigation.**

In evaluating the reasonableness of hourly rates, courts will take into account case-specific factors, including:

> The complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing

> scorched earth tactics), the timing demands of the case … and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 184 (2d Cir. 2008). While looking to local rates as presumptively reasonable, the Second Circuit consistently holds that courts may approve higher rates if the litigant "persuasively establish[es] that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 175 (2d Cir. 2009). Among the objective factors a court can consider is counsel's "special expertise in litigating the particular type of case." *Id.* at 175–76.

Although the Court need not even conduct a lodestar analysis in a percentage of the fund case, here, all of the applicable factors above support Plaintiffs' rates as reasonable. First, Courts recognize that hybrid Rule 23 and FLSA class and collective actions are particularly complex pieces of litigation. *See Sukhnandan*, 2014 WL 3778173, at *10. Based on Plaintiffs' research, no other hybrid cases have been litigated in the District of Vermont and only one FLSA collective action has been litigated here, and involved a much smaller company, a small number of opt-in plaintiffs, and significantly smaller damages. *See Forauer*, 2015 WL 225224 (approving Settlement of $22,000 for 23 opt-in plaintiffs). This case involves a nationwide company and its subsidiaries, 53 opt-in Plaintiffs for the FLSA claim and a state Rule 23 class, and damages in the millions.

Class Counsel were required to advance tens of thousands of dollars on a document database to store the hundreds of thousands of documents produced by Defendants as well as document review technology to review them. This case also involved nationwide travel given the various locations of Plaintiffs and Flowers' corporate executives and outside counsel. Significantly, Class Counsel

worked for nearly five years and invested thousands of hours without compensation to litigate this case. Counsel took this case on a contingent basis without any guarantee of success.

Class Counsel in this case had special expertise in litigating not only this *type* of case, but against this particular company. Class Counsel has successfully litigated a similar case against Flowers Foods and different subsidiaries in other parts of the country. They came into the case, therefore, with an institutional knowledge of this highly complex company and organizational structure, as well as an understanding of the Plaintiffs' experiences working as "independent distributors." In addition, as demonstrated by Counsel's declarations, the firms who worked on this matter have significant experience litigating Rule 23 wage and hour class actions and FLSA collective actions across the country, in addition to particular expertise in independent contractor litigation. This expertise was essential to negotiating meaningful non-monetary relief for the Class.

Given the resources and expertise needed to successfully prosecute this case, Class Counsel has demonstrated, therefore, that a "reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *See Simmons*, 575 F.3d at 175-76. For purposes of the lodestar cross-check, therefore, Class Counsel's rates, which have been approved in numerous other cases in various forums, are reasonable for this case. *See* Wanta Decl. ¶ 14; Ellingstad Decl. ¶ 12; Rudd Decl. ¶ 8; Schaffer Decl. ¶¶ 8-10. *See Davis v. Central Vt. Pub. Serv. Corp*, No. 5:11-cv-181, 2012 WL 4471226, at *11 (D. Vt. Sept. 27, 2012) (approving higher hourly rates for specialized, complex litigation).

Because Class Counsel's audited lodestar exceeds the requested 33% award from the common fund, Counsel's unopposed motion should be granted.

### IV. Plaintiffs' Expenses Are Reasonable and Necessarily Incurred to Achieve the Benefit Obtained On Behalf of the Class

Class Counsel seeks reimbursement of $157,862 in expenses necessarily and reasonably incurred in connection with the prosecution and negotiation of this action. "In a certified class action, the court may award reasonable and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. 23(h). It is well-established in this District that Class Counsel are entitled to the reimbursement of expenses incurred "that are incidental and necessary to the representation." *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987). Expenses are reimbursable if they are of the type normally billed by attorneys to paying clients. *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998); *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-230, 2016 WL 3361544, at *10 (D. Vt. June 14, 2016) (awarding class counsel reimbursement for expenses such as depositions, hiring of videographers and stenographers, research costs, expert fees and costs, and travel expenses); *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-cv-07192-CM, 2019 WL 6889901, at *22 (S.D.N.Y. Dec. 18, 2019) (awarding counsel reimbursement for expenses spent on investigation, photocopying of documents, messenger services, postage express mail, discovery, and other incidental expenses directly related to the case).

Here, Plaintiffs seek reimbursement for similar expenses. Plaintiffs' Counsel have provided an accounting of $157,862 in total costs they incurred during the course of litigating and negotiating this matter. This total is comprised of assessments made by each firm into a litigation fund as well as held costs incurred by each firm during the litigation. *See* Ellingstad Decl. ¶¶ 17-21; Rudd Decl. ¶¶ 15-16; Wanta Decl. ¶¶ 19-20; Schaffer Decl. ¶¶ 19-20; Bent Decl. ¶ 14. Plaintiffs' Counsel incurred reasonable expenses during the course of the litigation which include expenses related to maintaining a document database, deposition transcripts, expert fees, filing

550696.4                                    17

fees, mediation fees, photocopying of documents, postage, and travel expenses among others detailed in the declarations submitted in support herewith. *See* Wanta Decl. ¶ 4. All of these costs were necessary and reasonably incurred to bring this case to a successful conclusion, and they reflect the market rates for the various categories of expenses incurred. *Id*. Importantly, Plaintiffs' Counsel advanced these expenses over the course of five years without assurance that they would ever be reimbursed. The Court should therefore award Plaintiffs' claimed expenses.

### V. The Court Should Approve the Service Awards for Plaintiffs

Plaintiffs Nick Neff and Matthew McCrea respectfully request the Court to approve services awards in the amount of $15,000 each for their work as class representatives. Services awards, sometimes called incentive awards, are "not uncommon in class action cases and are within the discretion of the court." *In re AOL Time Warner ERISA Litig.*, No. 02-v-8853, 2007 WL 3145111, at *2 (S.D.N.Y. Oct. 26, 2007) (citations omitted). Indeed, courts in the Second Circuit frequently approve incentive awards to class representatives in successful class actions. *Allen*, 2016 WL 3361544, at *11 (approving $20,000 and $15,000 incentive awards for class representatives). In deciding whether to award class representatives, courts often consider the personal risk incurred by the plaintiff as well as the time and effort expended in assisting the prosecution of the litigation. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005).

First, Plaintiffs assumed personal risks in serving as class representatives for the FLSA and the Vermont classes. *Id*. (Incentive awards are "particularly appropriate in the employment context…[where] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers"); *Bozak v. FedEx Ground Package Sys., Inc.*, No. 3:11-cv-00738, 2014 WL 3778211, at *5 (D. Conn. July 31, 2014) ) (in a similar FLSA collective action where "there is no evidence or indication of any retaliation by Defendant, class

representatives merit recognition for assuming the risk of retaliation for the sake of absent class members."). Second, Plaintiffs should be awarded incentive payments for the work they undertook on behalf of the classes they represent. They expended time and effort by providing critical assistance to Class Counsel, participating in discovery, sitting for depositions, contributing to the settlement of the case, and advocating for the benefit of the classes. Thus, Plaintiffs have performed a valuable service to the classes they represent and should be awarded $15,000 in recognition of their work. *See Frank,* 228 F.R.D. at 187–88 (class representatives play an important role as the "primary source of information concerning the claims [,]" including responding to counsel's questions and reviewing documents).

Finally, the amount of the requested service award is consistent and reasonable with awards given in class action and collective actions. *See e.g.*, *Master v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 431 (2d Cir. 2007) (affirming service awards for $25,000 and $15,000)*; McReynolds v. Richards-Cantave*, 588 F.3d 790, 786 (2d Cir. 2009) (affirming $15,000 incentive awards to three class representatives); *Allen*, 2016 WL 3361544, at *11 (awarding $20,000 to $15,000 in incentive awards)*; Beebe v. V & J Nat'l. Enters., LLC*, No. 6:17-cv-06075, 2020 WL 2833009, at *11 (W.D.N.Y. June 1, 2020) (approving $15,000 service award); *Parker v. Jekyll and Hyde Ent. Holdings, LLC*, No. 08 Civ. 7670, 2010 WL 532960, at * 2 (S.D.N.Y. Feb. 9, 2010) (awarding $15,000 to class representatives in similar wage and hour case). Given the achievements for the absent class members and the consistency of this request with service payments awarded in other cases in this Circuit, the Court should find that the requested service awards are appropriate here. Accordingly, the parties ask the Court to approve service awards in the amount of $15,000 to Mr. Neff and Mr. McCrea.

## VI. Conclusion

For the above reasons, Class Counsel respectfully request the Court grant their unopposed motion for an award of 33% of the common fund for attorney's fees; reimbursement of expenses; and payment of service awards to the Named Plaintiffs.

Dated: July 13, 2020                                 Respectfully submitted,


/s/Susan E. Ellingstad
Susan E. Ellingstad
Rachel A. Kitze Collins
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, Minnesota 55402
Telephone: (612) 339-6900
Fax: (612) 339-0981
Email: seellingstad@locklaw.com
Email: bdclark@locklaw.com
Email: rakitzecollins@locklaw.com


Shawn J. Wanta
Christopher D. Jozwiak
Scott A. Moriarity
BAILLON THOME
JOZWIAK & WANTA LLP
100 South Fifth Street, Suite 1200
Minneapolis, Minnesota 55402
Telephone: (612) 252-3570
Fax: (612) 252-3571
Email: sjwanta@baillonthome.com
Email: cdjozwiak@baillonthome.com
Email: samoriarity@baillonthome.com

J. Gordon Rudd, Jr.
David Cialkowski
ZIMMERMAN REED PLLP
111 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 341-0400
Fax: (612) 341-0844
Email: Gordon.Rudd@zimmreed.com
Email: David.Cialkowski@zimmreed.com

Charles E. Schaffer
LEVIN SEDRAN & BERMAN
510 Walnut Street
Suite 500
Philadelphia, Pennsylvania 19106
Telephone: (215) 592-1500
Fax: (215) 592-4663
Email: cschaffer@lfsblaw.com

Merrill E. Bent, Esq
WOOLMINGTON, CAMPBELL, BENT & STASNY, PC
4900 Main Street
P.O. Box 2748
Manchester Center, VT 05255
Telephone: (802) 362-2560
Fax: (802) 362-7109
merrill@greenmtlaw.com

*Attorneys for Plaintiffs*